USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/28/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY SARKAR,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION et al.,

Defendants.

19-cv-4040 (MKV)

OPINION & ORDER
GRANTING
MOTION TO DISMISS

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiff Jay Sarkar, who is proceeding *pro se*, was paid, as an independent contractor, to provide occupational therapy services to public school children for approximately "5 months" in 2005 and 2006 [ECF No. 34 ("SAC" or the "Second Amended Complaint") ¶ 16]. The Special Commissioner of Investigation for the New York City School District ("SCI") found, and stated in a public letter, dated December 12, 2006, that Plaintiff had engaged in theft of service and misconduct by failing to provide services to students in his charge and bringing an unknown male to sessions with schoolchildren [ECF No. 44-1 ("SCI Letter")]. Many years later, Plaintiff filed two Article 78 petitions in New York State Supreme Court, both demanding that SCI take the SCI Letter off its website. Both petitions were dismissed.

More than a decade after the SCI letter issued and after Plaintiff had filed the state court actions, Plaintiff commenced this action. In a pleading that purports to assert twenty-two claims for relief against ten defendants, Plaintiff contends that school personnel illegally fired him and fabricated accusations and evidence against him, the SCI letter was "falsified," SCI defamed him, he received unduly delayed and falsified documents in response to a Freedom of Information Law ("FOIL") request, the rulings in the Article 78 proceedings are "not tenable," and Plaintiff has been subjected to cruel and unusual punishment, among other abuses. SAC ¶¶ 19, 20, 21, 22, 26, 49.

1

However, Plaintiff's claims are all time-barred or otherwise facially deficient.  Defendants move to dismiss, and that motion is GRANTED.

## I.      <u>BACKGROUND</u>[1]

### A.  The Parties

The plaintiff is Jay Sarkar, who is proceeding *pro se*.  *See* SAC ¶¶ 1, 14.  He brings this case against ten defendants.[2]  *See* SAC ¶¶ 2–11.  Specifically, Plaintiff names as defendants the City of New York, the New York City Department of Education (the "DOE"), and the Special Commissioner of Investigation for the New York City School District ("SCI"), which is "an investigative agency" that investigates corruption and crime within the DOE.  SAC ¶¶ 5, 6, 7.  He also names Richard A. Carranza, as Chancellor of New York City Department of Education,[3] and Richard Condon, who, "at all relevant times," was Commissioner of SCI.  SAC ¶¶ 8, 9.  Plaintiff also names as defendants Antoinette Bello, who, "at relevant times, was Assistant Principal at Public School 10" ("PS 10"); Barbara Hanson, who was Principal of PS 10; Kim Nohavicka, who was "Assistant Principal at PS 152"; and Laurence Henry and David Negron, who were "individual SCI investigator[s]."  SAC ¶¶ 2, 3, 4, 10, 11.

### B.  Facts

Plaintiff alleges that, in November 2005, he was employed by "KCM Therapy" and started working "as an Independent Contractor and as an Occupational Therapist" at PS 10 and PS 152.

---

[1] The facts are taken from the Second Amended Complaint [ECF No. 34 ("SAC")] and documents incorporated into the pleading by reference, including a letter, dated December 12, 2006, from the Special Commissioner of Investigation for the New York City School District, which is at the heart of this dispute [ECF No. 44-1 ("SCI Letter")].  *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 147 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] In his pleading, Plaintiff labels Antoinette Bello "Principal Defendant" and labels each of the other defendants "Subsidiary Defendant."  SAC ¶¶ 2–11.  If this distinction has legal significance, the Court is not familiar with it.

[3] Carranza was appointed long after Plaintiff was terminated and left office before Plaintiff filed his operative pleading.

SAC ¶ 15.  He was hired to "provide[] therapy to patients between the ages of 9-12 years."  SAC ¶ 15.  Plaintiff alleges that, because "he was an independent contractor and not a DOE employee, he was not required to sign in and sign out [on] the DOE employee timecards."  SAC ¶ 15.  Then, in April 2006, Bello directed that Plaintiff "sign in and out on DOE employee time card[s]."  SAC ¶ 16.  According to Plaintiff, he "asked . . . why all of a sudden" he was "being asked to sign in and out" but did not receive an explanation.  SAC ¶ 17.

Plaintiff alleges that "[o]n April 11, 2006, in retaliation and to stifle the Plaintiff . . . Bello, in conspiracy with Hanson, without giving any reason and without authority, wrongfully and instantly terminated Plaintiff."  SAC ¶ 19.  Plaintiff further contends: "Thereafter Plaintiff's patient records were falsified, tampered and forged by Defendants and thus fraudulent evidences were created against Plaintiff.  This became evident later, after Plaintiff obtained" documents pursuant to a Freedom of Information Law ("FOIL") request, "in November . . . 2017."  SAC ¶ 20.

Plaintiff alleges that "[o]n 12/12/2006, in conspiracy with other defendants, and based on falsified documents and evidences, SCI created a falsely substantiated SCI letter (hereinafter 'SCI 12/12/2006 letter').  Then SCI published and republished the letter on the internet."[4]  SAC ¶ 21.  That letter states, in pertinent part:

> An investigation conducted by this office has substantiated that Occupational Therapists Jay Sarkar and Poonam Batra, independent contractors provided by KCM Therapy . . . committed theft of service and employee misconduct.  Specifically, they submitted time sheets which falsely described the services being provided to students . . . . The investigation also substantiated that Sarkar and Batra allowed an unidentified male, not known to the DOE, to attend occupational therapy sessions with schoolchildren . . . .

---

[4] Plaintiff lists six instances of the alleged publication and republication of the SCI Letter, including: "On or about Feb[.] 7, 2018 on defendants' website"; "On or about Apr[.] 18, 2018 on defendants' website"; "On or about Oct[.] 10, 2018 on defendants' website"; and "On or about June 7, 2019 on defendants' website."  SAC ¶ 55.  Elsewhere in the Second Amended Complaint, Plaintiff alleges that "publication" of the SCI Letter has been "continuous," and "Defendants refused . . . to remove" it "[f]or over fifteen (15) years," suggesting that the letter has remained publicly available since 2006.  SAC ¶¶ 62, 63.

[ECF No. 44-1 ("SCI Letter" or, if quoting Plaintiff, "SCI 12/12/2006 letter")].[5]

The SCI Letter recommends that Plaintiff "be made ineligible to perform any services for the DOE." SCI Letter at 5. It also states that SCI referred the case to the "Bronx County District Attorney." SCI Letter at 5. Plaintiff alleges that the SCI Letter "libelously defamed" him and "ruined Plaintiff's professional and personal life." SAC ¶ 21.

Plaintiff next alleges that, just shy of a decade later, in August 2016, he requested "FOIL documents." SAC ¶ 22. He alleges that "in violation of FOIL laws, DOE did not produce the documents to Plaintiff within 30 days." SAC ¶ 22. According to Plaintiff, he received "spoliated and incomplete FOIL documents" in November 2017. SAC ¶ 26.

In the interim, in January 2017, Plaintiff, who was then represented by counsel, "filed an Article 78 Petition" in New York State Supreme Court, "to demand that defendants immediately take down the defamatory SCI 12/12/2006 letter off the internet."[6] SAC ¶ 23. In August 2017, "Plaintiff's Petition was denied."[7] SAC ¶ 23. Plaintiff appealed, *pro se*, and the Appellate Division later affirmed the decision to deny Plaintiff's 2017 Petition.[8] SAC ¶¶ 25, 32.

Plaintiff further alleges that "[o]n March 18, 2018 the fraud was actually discovered by Plaintiff, as per the private detective report by a detective hired by the Plaintiff." SAC ¶ 27. It is not clear what Plaintiff means when he alleges that "the fraud was actually discovered" in March

---

[5] As noted above, this letter, which Plaintiff submitted to the Court, is incorporated into his pleading by reference. *See Chambers*, 282 F.3d at 153.

[6] The Court takes judicial notice of the Article 78 Petition that Plaintiff filed in January 2017 [ECF No. 44-2 ("2017 Petition")] "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

[7] [ECF No. 44-3 at 2–4].

[8] [ECF No. 44-4; ECF No. 38-2].

2018, given that he had previously filed the 2017 Petition asserting that the SCI Letter was "false" and "based on false allegations" [ECF No. 44-2 at 4].

In August 2018, Plaintiff, proceeding *pro se*, filed a new Article 78 Petition in New York State Supreme Court, which he styled an Amended Petition, "with new proofs of documented fraud committed against Plaintiff, as evidenced in the FOIL records obtained in November . . . 2017 and [the] private detective report on March 18, 2018."[9] SAC ¶ 28. As Plaintiff states in his pleading, the New York court later "dismissed Plaintiff's [2018] Petition for fraud and defamation," ruling: "Petitioner's Article 78 Petition/Amended Verified Petition must be dismissed as the First Department has already held that the decision [of SCI] not to remove the report [from its website] was not arbitrary and capricious." SAC ¶ 33.

### C. This Action

#### 1. Initial Proceedings

While Plaintiff's 2018 Petition was pending in state court, Plaintiff filed a complaint in this District [ECF No. 2]. The case was originally assigned to Judge Furman. Plaintiff later filed the First Amended Complaint [ECF No. 6].

Thereafter, the case was reassigned to this Court. Defendants filed a letter requesting a pre-motion conference regarding their contemplated motion to dismiss the First Amended Complaint [ECF No. 18]. Defendants argued that Plaintiff's claims are time-barred and deficient in other respects. The Court scheduled a conference [ECF Nos. 19, 20].

Plaintiff, however, wrote a letter stating that he did not wish to participate in any court conferences and asked "to be dealt with through written submission" [ECF No. 21]. Plaintiff further stated that he was abroad in India and unable to return because of the pandemic but would

---

[9] [ECF No. 44-5].

"notify the Court . . . upon [his] return to the United States" [ECF No. 21].  Thereafter, the case languished on the Court's docket, despite two warnings to Plaintiff that failure to prosecute his case would result in dismissal [ECF Nos. 23, 27].

In response to an Order To Show Cause why the case should not be dismissed, Plaintiff represented that he still wished to prosecute his case [ECF No. 28].  The Court therefore granted Plaintiff one more opportunity to amend his pleading [ECF No. 29].  The Court warned that it was "Plaintiff's last opportunity to amend" to cure issues raised in Defendants' pre-motion letter [ECF No. 29].  The Court also set a briefing schedule for Defendants' motion to dismiss [ECF No. 29]. Plaintiff later filed the Second Amended Complaint [ECF No. 34].

### 2.   The Twenty-Two Claims in the Second Amended Complaint

The Second Amended Complaint purports to assert twenty-two causes of action.  First, Plaintiff asserts a claim for defamation, alleging that "Defendants DOE and SCI published and republished on Defendants' websites and disseminated online the false, fraudulent and defamatory SCI 12/12/2006 letter against Plaintiff."  SAC ¶¶ 56–64 ("Claim 1").  Second, the Second Amended Complaint purports to assert a claim for "Fraud and misrepresentation," alleging that "Principal defendant Antoinette Bello in conspiracy with her accomplices set up and committed fraud against Plaintiff by falsifying his medical records and his patients' records, expunged vital documents and evidences" and that "[w]ith full knowledge of the falsity of the SCI 12/12/2006 letter, Defendant NYC DOE and SCI published and republished the . . . letter."  SAC ¶¶ 65–70 ("Claim 2").

Third, Plaintiff asserts a claim for First Amendment retaliation, alleging that he "asked a benign question as to why was . . . Bello asking Plaintiff to sign in and out on the DOE employee time card," and "in retaliation [she] and her accomplices conspired and set up forged, falsified and

tampered . . . records and used those to falsely substantiate the SCI 12/12/2006 letter and defame" Plaintiff.  SAC ¶¶ 71–76 ("Claim 3").  Fourth, Plaintiff asserts a claim for violation of his Fifth Amendment right to due process, asserting that Defendants "did not give any prior notice of charges to Plaintiff and gave him no opportunity to defend himself and without impartial due process hearing imposed sanctions and penalties against Plaintiff."  SAC ¶¶ 77–81 ("Claim 4"). Fifth, Plaintiff asserts that "Defendants' acts" violated "Plaintiff's Fourteenth Amendment rights." SAC ¶¶ 82–85 ("Claim 5").

Sixth, Plaintiff purports to assert an Eight Amendment claim, alleging that "Defendants have imposed an indeterminate and permanent punishment against Plaintiff by the continuing publication of the SCI's fraudulent, unsubstantiated and defamatory SCI 12/12/2006 letter on their websites and have refused to remove it for more than fifteen (15) years."  SAC ¶¶ 86–92 ("Claim 6").  Seventh, Plaintiff asserts a claim for "[v]iolation of Health Insurance Portability and Accountability Act (HIPAA)," alleging that Defendants engaged in the "unauthorized destruction, alteration of medical records of patients for whom Plaintiff provided therapy services" and "forged and/or deleted signatures of Principal, Assistant Principal and Plaintiff in the Medical records of patients."  SAC ¶¶ 93–100 ("Claim 7").  Eighth, Plaintiff asserts a claim for violation of the New York State Freedom of Information Law ("FOIL"), alleging that Plaintiff did not receive a response to his FOIL request for 15 months and, when he did receive a response, "Plaintiff concluded that many of the documents were missing and/or unlawfully redacted and/or just plainly altered, tampered and forged."  SAC ¶¶ 101–108 ("Claim 8").

Ninth, Plaintiff asserts a claim under 42 U.S.C. § 1985, alleging that Defendants conspired to deprive Plaintiff of his rights under the "Fourth, Fifth and Fourteenth Amendments . . . because of Plaintiff's race, ancestry and/or ethnicity."   SAC ¶¶ 109–113 ("Claim 9").   Tenth, Plaintiff

asserts a claim under 42 U.S.C. § 1983 for "violation of Title VII."  SAC ¶¶ 114–116 ("Claim 10"). Eleventh, Plaintiff asserts a claim for violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"), alleging that "Defendants engaged in selective prosecution and discriminatory enforcement of the laws against Plaintiff because of Plaintiff's race, ancestry and/or ethnicity."  SAC ¶¶ 117–120 ("Claim 11").

For his purported twelfth cause of action, Plaintiff asserts that Defendants violated five different provisions of the New York State Constitution:

> Article I, §5 (prohibiting cruel and unusual punishments), Article I, §6 (providing for due process), Article I, §8 (guaranteeing freedom of speech), Article I, §11 (prohibiting discrimination in civil rights and providing for equal protection of laws) and Article I, §12 (prohibiting unreasonable searches and seizures).

SAC ¶¶ 121–129 ("Claim 12").  Thirteenth, Plaintiff asserts a claim for "harassment."  SAC ¶¶ 130–133 ("Claim 13").  Fourteenth, Plaintiff purports to assert a claim for "abuse of state and government power," again mentioning supposed "selective prosecution and discriminatory enforcement of the laws against Plaintiff."  SAC ¶¶ 134–138 ("Claim 14").

Fifteenth, Plaintiff asserts a claim for negligent infliction of emotional distress based on the "paragraph" of the SCI letter stating that "the SCI is referring Defendants' claims to the District Attorney," which statement allegedly "paralyzed Plaintiff's actions" as he "was living each and every day under the threat of police coming to arrest him."  SAC ¶¶ 139–146 ("Claim 15"). Sixteenth, Plaintiff asserts a claim for intentional infliction of emotional distress "through the selective prosecution and discriminatory enforcement of the laws against Plaintiff."  SAC ¶¶ 147–151 ("Claim 16").  Seventeenth, Plaintiff alleges that Defendants "portrayed plaintiff in a false and/or misleading light" and "violated [his] privacy" in the SCI letter.  SAC ¶¶ 152–163 ("Claim 17").

The eighteenth claim of the Second Amendment Complaint is for a declaratory judgment that Plaintiff's "discharge" was "unlawful, wrongful, and discriminatory." SAC ¶¶ 164–168 ("Claim 18"). Nineteenth, Plaintiff alleges that "Defendant SCI published the fabricated and unsubstantiated investigative findings 12/12/2006 letter and thus violated the governing law, namely Executive Order No. 11 of Mayor of New York City, Section 3, subsection (e)." SAC ¶¶ 169–176 ("Claim 19"). Twentieth, Plaintiff seeks a declaratory judgment that each alleged "republication" of the SCI letter constitutes a separate violation of Plaintiff's rights. SAC ¶¶ 177–184 ("Claim 20").

As a purported twenty-first cause of action, Plaintiff asserts that SCI lacked "statutory authority to publish the . . . 12/12/2006 letter," which Plaintiff further asserts means he "is entitled to raise his claims at any time" without regard for "the statute of limitations." SAC ¶¶ 185–191 ("Claim 21"). Finally, as a purported twenty-second cause of action, Plaintiff asserts: "Agency determinations cannot be res judicata unless they arise from quasi-judicial proceedings that are similar to those that take place in a court of law." SAC ¶¶ 192–195 ("Claim 22"). Plaintiff adds that "Defendants never provided any hearing to plaintiff" with "the opportunity to provide witnesses, defenses and proof," and "the so-called 'investigation' by the defendants was a farce and sham." SAC ¶¶ 194, 195.

### 3. The Motion To Dismiss

Defendants filed a motion to dismiss the Second Amended Complaint [ECF Nos. 37, 38, 39 ("Def. Mem."), 40]. Plaintiff filed an opposition,[10] including more than 60 pages of briefing

---

[10] Plaintiff labels his submission an opposition and "cross-motion" but does not seek any relief other than rejection of Defendants' motion to dismiss.

(the page limit was 25) and more than 800 pages of exhibits [ECF No. 44 ("Pl. Opp.")].[11]
Defendants filed a reply [ECF No. 45].

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the [factual] allegations contained in a complaint," but the Court is not required to accept "legal conclusions," and mere "conclusory statements" are not factual allegations. *Id.*

The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of *pro se* litigants." *Id.* at 158. Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.

---

[11] While "a *pro se* litigant is entitled to special solicitude," his "*pro se* status" does not "excuse frivolous or vexatious filings" and does not "exempt [him] from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). Plaintiff's voluminous submission in opposition to the motion to dismiss obviously does not conform to relevant rules. Nevertheless, the Court carefully reviewed all of Plaintiff's filings and construed liberally them "to raise the strongest arguments they suggest." *Id.* at 472 (internal quotation marks and citation omitted).

### III.    <u>ANALYSIS</u>

**A. Plaintiff's Claims Arising Out of Events in 2006 Are Time-Barred.**

Virtually all of Plaintiff's claims arise out events that allegedly took place nearly eighteen years ago, in 2006.[12]  *See* SAC ¶¶ 19, 21.  Specifically, Plaintiff alleges that in April 2006 "Bello, in conspiracy with Hanson, . . . wrongfully . . . terminated Plaintiff."  SAC ¶ 19.  He further alleges that, sometime before December 2006, "Plaintiff's patient records were falsified, tampered and forged by Defendants and thus fraudulent evidences were created against Plaintiff."  SAC ¶ 20.  Then, Plaintiff alleges, on December 12, 2006, SCI, "in conspiracy with other defendants," issued the SCI Letter, based on the allegedly falsified records, and "published and republished the letter on the internet."  SAC ¶ 21.

In our system of justice, there is "a time limit for suing in a civil case."  *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) (quoting Black's Law Dictionary 1546 (9th ed. 2009) ("Black's")).  "Statutes of limitations" and statutes of repose "establish the period of time within which a claimant must bring an action."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013).  Time limits serve crucial purposes.  They "require plaintiffs to pursue 'diligent prosecution of known claims.'"  *CTS Corp.*, 573 U.S. at 8 (quoting Black's 1546).  They also "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"  *CTS Corp.*, 573 U.S. at 8 (brackets omitted) (quoting *Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–349 (1944)).  A time bar also "embodies the idea

---

[12] The sole exception is Plaintiff's FOIL claim (Claim 8), which arises out of events starting in 2016, *see* SAC ¶ 22, and which fails to state a claim, as a matter of law, for other reasons discussed below.

that at some point a defendant should be able to put past events behind him." *CTS Corp.*, 573 U.S. at 9.

In general, "a statute of limitations begins to run when the cause of action 'accrues'—that is, when 'the plaintiff can file suit and obtain relief.'" *Heimeshoff*, 571 U.S. at 105 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). "Under the traditional rule of accrual," the clock starts as soon as the allegedly "wrongful act or omission results in damages," even if "the full extent" of the harm "is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks and citation omitted). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). Based on Plaintiff's allegations, virtually all of his claims arise out of events in 2006. And it is clear on the face of the Second Amended Complaint that statutes of limitations apply to bar his claims.

### 1. Claims Arising Out of Plaintiff's Termination in April 2006

For all of Plaintiff's claims arising out of his allegedly unlawful termination, the statute of limitations began to run when he was terminated in April 2006. *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000); *Mompoint v. City of New York*, 299 A.D.2d 527, 528, 751

N.Y.S.2d 38, 39 (2nd Dep't 2002).  That is when Plaintiff suffered the harm, *i.e.*, his allegedly

unlawful termination, and his claims accrued.  *See Heimeshoff*, 571 U.S. at 105.

The statute of limitation for claims pursuant to Section 1983 and Section 1985, which

include Plaintiff's federal employment discrimination claim and his federal constitutional claims,

is three years.  *See Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir.

2001); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997).  The ordinary

limitations period for a claim of employment discrimination in violation of the New York State

Human Rights Law ("NYSHRL") and for claims under the New York State Constitution is likewise

three years.  *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("the limitations period

for bringing an HRL claim is . . . three years"); *Koerner v. State*, 62 N.Y.2d 442, 447, 467 N.E.2d

232, 234 (1984) (same); *423 S. Salina St., Inc. v. City of Syracuse*, 68 N.Y.2d 474, 488 & n.5, 503

N.E.2d 63, 70 (1986) ("three-year limitations period" for "constitutional tort" actions); *see also*

N.Y. C.P.L.R. § 214(5); *Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman

Shield, 7421*, 2016 WL 354913, at *3 (S.D.N.Y. Jan. 28, 2016).  Moreover, New York law provides

a limitations period of one year and ninety days for tort claims against both the DOE and its

employees, as well as a one-year statute of limitations for other actions against the DOE.  *See* N.Y.

Educ. Law § 3813; N.Y. Gen. Mun. L. § 50-i; *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d

200, 211 (E.D.N.Y. 2014).

A number of the claims in the Second Amended Complaint clearly arise out of Plaintiff's

allegedly unlawful termination and are clearly barred by the applicable three-year statutes of

limitations.[13]   In particular, Plaintiff's First Amendment retaliation claim (Claim 3), asserted

---

[13] Plaintiff has also failed to exhaust federal and state administrative remedies.  Specifically, a plaintiff must file an administrative charge of discrimination with the EEOC or a New York state agency within 300 days of the allegedly discriminatory event.  *See Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).

pursuant to Section 1983, expired in 2009.  *See Jaghory*, 131 F.3d at 331.  Liberally construing the

Second Amended Complaint, Plaintiff asserts an analogous claim under Article 1, Section 8 of the

New York State Constitution (Claim 12), *see* SAC ¶ 122, which is also time-barred.  *See 423 S.*

*Salina St., Inc.*, 68 N.Y.2d at 488. [14]  Plaintiff's federal employment discrimination claim (Claim

10) similarly is time-barred. *See Jaghory*, 131 F.3d at 331.  To the extent that Plaintiff asserts an

employment discrimination claim under the NYSHRL (Claim 11), that claims is likewise time-

barred.  *See Lore*, 670 F.3d at 169; N.Y. Educ. Law § 3813.

To the extent that Plaintiff alleges his federal due process rights were violated because he

was denied notice and a hearing prior to his 2006 termination (Claim 4), *see* SAC ¶¶ 77–81, that

claim is subject to a three-year limitations period and is time-barred.  *See Jaghory*, 131 F.3d at

331.  Liberally construing the Second Amended Complaint to assert an analogous claim pursuant

to Article 1, Section 6 of the New York State Constitution (Claim 12), that claim, too, is time-

barred.  To the extent that Plaintiff's Fourteenth Amendment Equal Protection claim (Claim 5) and

his claim under Article 1, Section 11 of the New York State Constitution (Claim 12) are based on

his 2006 termination, those claims are time-barred for the same reasons.  Similarly, Plaintiff alleges

that, in violation of Section 1985, Defendants conspired to deprive him of rights under the "Fourth,

Fifth and Fourteenth Amendments . . . because of [his] race, ancestry and/or ethnicity."  SAC ¶¶

---

[14] In the alternative, Plaintiff failed to file a timely notice of claim as required by Gen. Mun. Law § 50-e.  *See Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 146 (N.D.N.Y. 2011) (citing *423 S. Salina St.* and dismissing a claim under "Article 1 § 8 of the New York State Constitution" based on "fatal" failure to file notice of claim).

109–113 (Claim 9).  Insofar as this claim arises out of his termination, the claim is time-barred.  *See Jaghory*, 131 F.3d at 331.

Moreover, "the statute of limitations applicable to declaratory judgment actions is the limitation applicable to the underlying cause of action."  *In re Lehman Bros. Inc.*, 617 B.R. 231, 244 (Bankr. S.D.N.Y. 2020), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, No. 19-3245, 2021 WL 4127075 (2d Cir. Sept. 10, 2021); *see 118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982).  Accordingly, Plaintiff's claim for a declaratory judgment that his "discharge" was "unlawful, wrongful, and discriminatory" (Claim 18) is time-barred.  SAC ¶¶ 164–168; *see In re Lehman Bros. Inc.*, 617 B.R. at 244.

### 2.  Claims Arising Out of the Alleged Falsification of Records

As noted above, the Second Amended Complaint alleges that "Plaintiff's patient records were falsified, tampered and forged by Defendants and thus fraudulent evidences were created against Plaintiff."  SAC ¶ 20.  This allegedly occurred before December 2006, since Plaintiff alleges the SCI Letter was based on the allegedly falsified records.  *See* SAC ¶¶ 21, 75.  Plaintiff's claims based on these alleged events are time-barred.[15]

Specifically, the Second Amended Complaint purports to assert a claim for "Fraud and misrepresentation" (Claim 2), alleging that "Bello in conspiracy with her accomplices set up and committed fraud against Plaintiff by falsifying his medical records and his patients' records, expunged vital documents and evidences."  SAC ¶¶ 65–70.  Plaintiff asserts that the alleged falsification of records "became evident later, after Plaintiff obtained the FOIL documents in November . . . 2017."  SAC ¶ 20.  Plaintiff also alleges that "the fraud was actually discovered" in March 2018, when he received a report by a private detective he had hired.  SAC ¶ 27.

---

[15] Plaintiff also purports to assert a HIPPA claim based on the alleged fraud (Claim 7).  As discussed below, that claim fails because there is no private cause of action under HIPPA.

Under New York Law, "a fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or 'could with reasonable diligence have discovered it.'" *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 909 N.E.2d 573, 576 (2009) (quoting N.Y. C.P.L.R. § 213(8)). Thus, since the alleged fraud took place in 2006, *see* SAC ¶¶ 20, 21, 75, Plaintiff was required to file an action either by 2012, or within two years of when he reasonably could have discovered it, *Sargiss*, 12 N.Y.3d at 532.

Plaintiff contends that he did not discover the alleged fraud until 2017 or 2018, but he does not explain why it took so long. According to his own allegations, Plaintiff waited approximately ten years to begin to look into the alleged fraud. *See* SAC ¶ 22. That is not "reasonable diligence." *Sargiss*, 12 N.Y.3d at 532; N.Y. C.P.L.R. § 213(8).

Plaintiff does not explain what prompted him to investigate a decade after the events in question, or why he could not have taken the same steps that allegedly enabled him to uncover the fraud in 2017 or 2018 ten years earlier. Furthermore, the allegations in the Second Amended Complaint about when Plaintiff discovered the supposed fraud contradict each other. *See* SAC ¶ 20 (alleging the fraud first "became evident" in November 2017); *see* SAC ¶ 27 (alleging Plaintiff "actually discovered" the fraud in March 2018). And those allegations are belied by Plaintiff's earlier filing of an Article 78 Petition, in a January 2017, attacking the SCI Letter. Even on a motion to dismiss, the Court is not required to credit "factual assertions that are contradicted by the complaint itself" or by documents "of which the court may take judicial notice," such as the Article 78 Petition. *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011).

Plaintiff's fraud claim (Claim 2) based on an alleged fraud in 2006 is clearly time-barred.[16]

---

[16] "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). This principle, however, does not permit a plaintiff to wait more than a decade to investigate a suspected fraud. Crucially, Plaintiff does not allege that he was "induced

To the extent that Plaintiff's somewhat opaque Section 1985 claim (Claim 9) arises out of the alleged falsification of documents in 2006, the three-year statute of limitations applies, and the claim is time-barred.  *See Jaghory*, 131 F.3d at 331.  Plaintiff also appears to allege that his First Amendment retaliation claim (Claim 3) arises, in part, out of the alleged falsification of documents, *see* SAC ¶ 75, but, again, the three-year statute of limitations clearly bars that claim, *see Jaghory*, 131 F.3d at 331.

### 3. Claims Arising Out of the SCI Letter

According to Plaintiff, SCI, "in conspiracy with other defendants," issued the SCI Letter on December 12, 2006 and "published and republished the letter on the internet." SAC ¶ 21. Plaintiff does not expressly allege that the SCI Letter was "published" the same day it issued.  But the Second Amended Complaint, which was filed in 2022, alleges that "publication" of the SCI Letter has been "continuous," and "Defendants refused . . . to remove" it "[f]or over fifteen (15) years," suggesting that it has public since 2006.  SAC ¶¶ 62, 63.

Plaintiff's claim for defamation based on the SCI Letter (Claim 1) is clearly time-barred. "Under New York law, a defamation claim must be asserted within one year of the date on which the defamatory statement was published or uttered to a third party, even if it would have been impossible for the plaintiff to discover the injury at that time." *Conte v. Cnty. of Naussau*, 596 F. App'x 1, 4 (2d Cir. 2014); *see* N.Y. C.P.L.R. § 215(3).  Further, "New York adheres to a single publication rule in determining when the statute of limitations begins to run on a defamation claim." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (citing *Gregoire v. G.P. Putnam's Sons*, 298 N.Y. 119, 125, 81 N.E.2d 45 (1948)).  Under the "single publication"

---

by fraud" to refrain from investigating or filing his claim.  *Id.*  Rather he simply and incredibly asserts that he learned of the alleged falsification of record for the first time in 2017 and "actually discovered" the alleged fraud in 2018. There is no explanation in the Second Amended Complaint for why, after ten years, Plaintiff first decided to investigate the misconduct he alleges.

rule, the statute of limitations begins to run on "the earliest date" that the allegedly defamatory item "became generally available to the public." *Van Buskirk*, 325 F.3d at 89 (quoting *Tomasino v. William Morrow & Co.*, 174 A.D.2d 734, 571 N.Y.S.2d 571, 572 (2d Dept. 1991)). According to Plaintiff, the SCI Letter was made public in 2006. *See* SAC ¶¶ 21, 62, 63. His defamation claim expired one year later.

Plaintiff maintains that neither his defamation claim, nor any of his other claims based on the SCI Letter is time-barred because "Defendants republished the same defamatory 12/12/2006 SCI letter on Defendants' website several times," including as recently as February 7, 2018 and June 7, 2019. SAC ¶ 55. Plaintiff contends that "each such republication also renewed the statute of limitations for all causes of actions asserted by Plaintiff." SAC ¶ 40. He argues in his brief that "an exception to the single publication rule, namely the concept of 'republication,'" saves his claims. Pl. Opp. at 24.

Plaintiff's own recitation of the republication exception makes clear that it does not apply to his allegations. As an initial matter, it is well-settled that the single publication rule applies to websites, and unrelated modifications to the website do not constitute republications of the allegedly-defamatory material. *Firth v. State*, 98 N.Y.2d 365, 371, 775 N.E.2d 463, 467 (2002). Moreover, "continuous access . . . via hyperlinks to a website is not a republication." *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (1st Dep't 2014). Plaintiff's own allegations that the SCI Letter has been continuously available and has never been removed since 2006, *see* SAC ¶¶ 62, 63, establish that the single publication rule applies and there has been no republication, *see Firth*, 98 N.Y.2d at 371; *Martin*, 990 N.Y.S.2d at 483.

Even accepting Plaintiff's conflicting assertion that SCI republished the SCI Letter in some way, the republication exception still does not apply to save Plaintiff's claim. As Plaintiff

acknowledges, New York courts apply this exception when: "the subsequent publication is intended to and actually reaches a new audience, the second publication is made on an occasion distinct from the initial one, the republished statement has been modified in form or in content, and the defendant has control over the decision to republish." *Martin*, 990 N.Y.S.2d at 483 (internal quotation marks and citations omitted); *see* Pl. Opp. at 24. Here, there are no allegations that the republications of the SCI Letter reached a different audience, nor that it was ever modified in any way. As such, the republication exception does not apply, and Plaintiff's defamation claim based on a 2006 letter is time-barred.

Plaintiff also asserts a claim for negligent infliction of emotional distress based on the SCI Letter (Claim 15). He alleges that the statement in the letter that "the SCI is referring Defendants' claims to the District Attorney . . . paralyzed Plaintiff's actions" as he "was living each and every day under the threat of police coming to arrest him." SAC ¶¶ 139–146. The statute of limitations for negligent infliction of emotional distress is three years. *See* N.Y. C.P.L.R. § 214(5); *see also Sash v. City of New York*, 2006 WL 2474874, at *6 (S.D.N.Y. Aug. 11, 2006). As such, the claim is clearly time-barred.

Liberally construing the Second Amended Complaint, the federal and state constitutional claims discussed above in connection with Plaintiff's termination (Claim 4, Claim 5, Claim 9, Claim 11, Claim 12) could also relate to the SCI Letter. As discussed above, these claims are all subject to three-year limitations. Meaning, to the extent that Plaintiff claims his federal and state due process rights were violated because he was denied notice and a hearing prior to the issuance of the SCI Letter (Claim 4 and Claim 12), those claims are subject to a three-year limitations period and are time-barred. *See Jaghory*, 131 F.3d at 331; *Lore*, 670 F.3d at 169. Similarly, Plaintiff's Fourteenth Amendment Equal Protection claim (Claim 5), the state-law analog (Claim 12), and

the Section 1985 claim (Claim 9) are all subject to three-year limitations periods and are therefore time-barred. *See Jaghory*, 131 F.3d at 331; *Lore*, 670 F.3d at 169. Plaintiff's other claims arising out of the SCI Letter fail for other reasons discussed below.[17]

### B. Plaintiff Fails To State a Claim for First Amendment Retaliation (Claim 3).

As indicated above, Plaintiff appears to assert a claim for First Amendment retaliation. The subheading of his third cause of action is: "Retaliation for exercising First Amendment rights and privileges, in violation of Title VII 42 U.S.C. §1983 [sic] and other applicable laws and regulations." SAC at 14; *see* SAC ¶¶ 71–76. Plaintiff alleges that he "asked a benign question as to why was . . . Bello asking Plaintiff to sign in and out on the DOE employee time card," even though he was an independent contractor. SAC ¶ 73. Plaintiff further alleges that "in violation of the First Amendment rights and in order to stifle Plaintiff's question and in retaliation," Bello terminated Plaintiff and "conspired" with others to falsify records, which were used to "falsely substantiate the SCI 12/12/2006 letter" regarding his termination. SAC ¶¶ 19, 75.

The Court has already explained that this claim is time-barred. Defendants argue that, "even if timely," Plaintiff fails to state a claim for First Amendment retaliation. Def. Mem. at 12, 13. In particular, a plaintiff asserting a First Amendment retaliation claim must allege that he spoke about a matter of public concern, rather than a personal grievance. Def. Mem. at 13. Defendants are correct.

To allege First Amendment retaliation, a plaintiff must first allege that he engaged in speech or conduct that was protected by the First Amendment. *Agosto v. New York City Department of Education*, 982 F.3d 86, 94 (2d Cir. 2020). As such, to assert "a claim of retaliation in violation of

---

[17] As discussed below, Plaintiff's Eighth Amendment claim (Claim 6) is frivolous. Plaintiff's false light claim (Claim 17) is not cognizable. With respect to Claim 19, there is no private right of action under Executive Order No. 11, § 3(e). Claim 20 and Claim 21 are, essentially, incorrect legal conclusions.

the First Amendment under 42 U.S.C. § 1983," a public employee or "public contractor, such as [Sarkar]," must allege that he "spoke as a citizen on a matter of public concern." *McGuire v. Warren*, 207 F. App'x 34, 36 (2d Cir. 2006); *see Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012) ("Speech by a public employee is protected by the First Amendment only when the employee is speaking as a citizen on a matter of public concern.") (internal quotation marks and citation omitted); *Golodner v. Berliner*, 770 F.3d 196, 207 (2d Cir. 2014) (no "difference . . . between independent contractors and employees in this context") (internal quotation marks and citation omitted). "[W]hether a public employee spoke as a citizen on a matter of public concern is a question of law" for a court to decide. *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999)).

Plaintiff does not allege that he engaged in any protected speech or conduct. He alleges that he asked why he had to "sign in and out on the DOE employee time card." SAC ¶ 73. This speech clearly concerned a "personal grievance[]" and did not have any "broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis*, 165 F.3d at 163–64). As such, Plaintiff fails to state a claim for First Amendment retaliation.

## C. Plaintiff Fails To State an Eighth Amendment Claim (Claim 6).

In support of a supposed Eighth Amendment claim, Plaintiff contends that the continuous availability of the SCI Letter on the SCI website is a form of cruel and unusual punishment. *See* SAC ¶¶ 86–92. This claim is plainly meritless. The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' *on those convicted of crimes*." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis added). Plaintiff, who has not been convicted of a crime, cannot invoke the

Eighth Amendment.  Plaintiff's allegation of cruel and unusual punishment in violation of Article 1, Section 5 of the New York Constitution (Claim 12) fails for the same reason.  *Powlowski v. Wullich*, 102 A.D.2d 575, 583, 479 N.Y.S.2d 89, 96 (4th Dep't 1984) (Article 1, Section 5 applies only to "convicted prisoners").

### D.  Plaintiff Fails To State a HIPPA Claim (Claim 7).

Plaintiff purports to assert a HIPPA claim (Claim 7) based on the alleged "unauthorized destruction, alteration of medical records of patients for whom Plaintiff provided therapy services" and "forged and/or deleted signatures of Principal, Assistant Principal and Plaintiff in the Medical records of patients."  SAC ¶¶ 93–100.  But "there is no private cause of action under HIPAA."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).  Accordingly, the purported HIPPA claim is dismissed.

### E.  Plaintiff Fails To State a FOIL Claim (Claim 8).

Plaintiff alleges that the response to his request pursuant to the New York Freedom of Information Law ("FOIL") was unduly delayed and, once he did receive a response, he "concluded that many of the documents were missing and/or unlawfully redacted and/or just plainly altered, tampered and forged."  SAC ¶¶ 101–108.  However, "the appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to . . . Article 78 upon exhaustion of administrative remedies."  *Schuloff v. Fields*, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997); *see Greenberg v. Bd. of Educ. Of the City of N.Y.*, 125 F.R.D. 361, 362 (E.D.N.Y. 1989).  Under New York law, a person must first appeal the denial of access to the "head, chief executive or governing body" of the entity or agency in possession of the documents.  N.Y. Pub. Off. Law. § 89(4)(a).  The next step is an Article 78 proceeding.  *See*

N.Y. Pub. Off. Law. § 89(4)(b).  Plaintiff does not allege that he has done any of this.[18]  *See also Davis v. Guarino*, 52 Fed. App'x 568 (2d Cir. 2002) (denial of a plaintiff's New York FOIL request was not a basis for a federal due process claim because "an Article 78 proceeding is a perfectly adequate post-deprivation remedy").

### F.  Plaintiff Fails To State a Claim for Harassment (Claim 13).

The subheading of Plaintiff's thirteenth claim is "Harassment."  SAC at 23; *see* SAC ¶¶ 130–133.  Plaintiff alleges that Defendants' conduct "amounted to selective prosecution and discriminatory enforcement of the New York laws against Plaintiff, including harassment."  SAC ¶ 131.  It is settled New York law that "[t]here is no cause of action for 'harassment.'"  *Bd. of Managers of Exec. Plaza Condo. v. Jones*, 251 A.D.2d 89, 90, 674 N.Y.S.2d 304 (1st Dep't 1998); *see also Goldstein v. Tabb*, 177 A.D.2d 470, 471, 575 N.Y.S.2d 902 (2nd Dep't 1991) ("New York does not recognize a cause of action to recover damages for harassment.").  Accordingly, any claim for harassment is dismissed.  Plaintiff also fails to state a claim for selective prosecution, as discussed below.

### G.  Plaintiff Fails To State a Claim for Selective Prosecution (Claims 11, 12, 13, 14, 16).

Plaintiff asserts that Defendants subjected him to "selective prosecution and discriminatory enforcement" of the law in connection with several claims.  Specifically, Plaintiff asserts a claim for violation of the NYSHRL (Claim 11), alleging that "Defendants engaged in selective prosecution and discriminatory enforcement of the laws against Plaintiff because of Plaintiff's race, ancestry and/or ethnicity."  SAC ¶¶ 117–120.  He includes a similar allegation under the heading of harassment (Claim 13), as noted above.  Plaintiff asserts a claim for "abuse of state and government power" (Claim 14), alleging "selective prosecution and discriminatory enforcement

---

[18] Plaintiff did initiate Article 78 proceedings attacking the SCI Letter but did not allege a denial of access to documents pursuant to FOIL in those proceedings [ECF Nos. 44-2, 44-5].

of the laws against Plaintiff."  SAC ¶¶ 134–138.  He also asserts a claim for intentional infliction of emotional distress "through the selective prosecution and discriminatory enforcement of the laws against Plaintiff" (Claim 16).  SAC ¶¶ 147–151.

"The underlying right asserted" in a claim of selective prosecution "is to equal protection of the laws as guaranteed by the 14th Amendment and the New York State Constitution (art. I, § 11)."  *303 W. 42nd St. Corp. v. Klein*, 46 N.Y.2d 686, 693, 389 N.E.2d 815, 818 (1979).  To allege an equal protection claim that "sounds in selective enforcement," a plaintiff must allege "*first*" that "compared with others similarly situated," he was "selectively treated," and "*second*" that this treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" him.  *Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 631, 814 N.E.2d 410 (2004) (emphases in original).  Plaintiff fails to allege that anyone else was similarly situated and treated differently. The purely conclusory assertions recited above with respect to these claims are not factual allegations.  *See Iqbal*, 556 U.S. at 678.  As such, Plaintiff fails to state a claim for selective prosecution.

Such a claim is time-barred in any event, since any "claim for damages for an intentional tort is subject to the one year limitations period," including a claim that "sounds in either abuse of process, malicious prosecution or intentional infliction of emotional distress."  *Gallagher v. Directors Guild of Am., Inc.*, 144 A.D.2d 261, 262, 533 N.Y.S.2d 863, 864 (1st Dep't 1988) (internal quotation marks and citation omitted).

## H.  Plaintiff Fails To State a Claim for False Light Invasion of Privacy (Claim 17).

The subheading of Plaintiff's seventeenth cause of action is: "Defendants, including SCI, portrayed plaintiff in a false or misleading light."  SAC at 27; *see* SAC ¶¶ 152–163.  Plaintiff

alleges that, "[i]n the SCI 12/12/2006 letter, Defendants unlawfully . . . disclosed [his] identity" and "violated Plaintiff's privacy."  SAC ¶ 153.  He further alleges that "Defendants put Plaintiff in a bad light . . . as a person who poses risk and danger to children."  SAC ¶ 155.

It is clear that Plaintiff seeks to assert a claim for false light invasion of privacy, which is a tort in other states.  *See, e.g.*, *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986).  However, a "'false light' invasion of privacy claim [is] not cognizable under New York law."  *Pedraglio Loli v. Citibank Inc.*, 173 F.3d 845, 1999 WL 187913 (2d Cir. 1999) (summary order) (affirming dismissal where a *pro se* plaintiff alleged "false light"); *see DeIuliis v. Engel*, No. 20-cv-3252 (NRB), 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-7568 (PGG), 2018 WL 4735717, at *13 (S.D.N.Y. Sept. 29, 2018) ("New York does not recognize the tort of false light invasion of privacy."); *Bloom v. Fox News of Los Angeles*, 528 F. Supp. 2d 69, 73 n.4 (E.D.N.Y. 2007) (ruling in a *pro se* case that any false light claim must be dismissed as "not cognizable under New York Law").  Accordingly, Plaintiff's false light claim is "dismissed . . . as not cognizable under New York law."  *Pedraglio Loli*, 173 F.3d at 845.

## I.   Plaintiff Fails To State a Claim for Violation of Executive Order No. 11, § 3(e) (Claim 19)

Plaintiff alleges that "SCI published the fabricated and unsubstantiated investigative findings 12/12/2006 letter and thus violated the governing law, namely Executive Order No. 11 of Mayor of New York City, Section 3, subsection (e)."  SAC ¶¶ 169–176.  This allegation cannot sustain a free-standing claim for relief.  The Executive Order in question describes the powers and

duties of SCI.  It does not create a "private right" or "private remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  As such, the purported claim is dismissed.

**J.  Remaining Claims**

Plaintiff seeks a declaratory judgment that each alleged "republication" of the SCI letter was a separate violation of his rights (Claim 20).  SAC ¶¶ 177–184.  As explained above, as a matter of law, this is incorrect.  *See Firth*, 98 N.Y.2d at 371; *Martin*, 990 N.Y.S.2d at 483.  As a purported twenty-first cause of action, Plaintiff asserts that SCI lacked authority to publish the SCI letter and, thus, he "is entitled to raise his claims at any time" without regard for "the statute of limitations" (Claim 21).  SAC ¶¶ 185–191.  This is neither a correct statement of law, nor a cognizable claim.  Finally, as a purported twenty-second cause of action, Plaintiff asserts that "[a]gency determinations cannot be res judicata unless they arise from quasi-judicial proceedings that are similar to those that take place in a court of law."  SAC ¶¶ 192–195.  He adds that "Defendants never provided any hearing to plaintiff" with "the opportunity to provide witnesses, defenses and proof," and "the so-called 'investigation' by the defendants was a farce and sham."  SAC ¶¶ 194, 195.  These assertions are not "a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

The Court has liberally construed Plaintiff's pleadings and briefs to raise the strongest arguments they suggest.  *See McLeod*, 864 F.3d at 156.  However, these purported claims are requests for "remedies, not causes of action," *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010), are duplicative of other claims, *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006), and are otherwise facially deficient.  As such, these remaining claims are dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, each of Plaintiff's claims is time-barred or otherwise facially deficient, and Defendants' motion to dismiss [ECF No. 37] is GRANTED.

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 37 and to close this case.

**SO ORDERED.**

**Date:  March 28, 2024**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

27